IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DROPLETS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:11-CV-401 |
| | § | |
| eBAY, INC., et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

### O R D E R

The above-referenced case was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636.  The following pending motion is before the Court: Defendants' Motion to Sever and to Transfer Venue to the United States District Court for the Northern District of California Under 28 U.S.C. §1404(a) (Docket Entry # 76).  The Court, having considered the relevant briefing and hearing arguments of counsel June 21, 2012, is of the opinion Defendants' motion to sever should be **GRANTED**.  The above-captioned case is hereby severed into four separate causes of action (Target; Nordstrom; Williams Sonoma; and the Non-Moving Defendants), with the non-moving Defendants remaining in C.A. No. 2:11cv401.  The Court considers whether Plaintiff's separate causes of action against Williams Sonoma, Nordstrom, and Target should be transferred to the Northern District of California in its discussion below.

### I. BACKGROUND

On September 11, 2011, Droplets, Inc. ("Plaintiff") filed its complaint against Defendants, asserting infringement of United States Patent Nos. 6,687,745 ("the '745 patent") and 7,502,838

("the '838 patent") (collectively "Asserted Patents"). Plaintiff's Complaint for Patent Infringement, (Docket Entry # 1)("Complaint"). Plaintiff accuses each defendant of infringement by "making, using, selling, offering to sell, and/or importing . . . : (i) web applications and software . . . that transmit and display search suggestions and that are made available to users through web pages owned or controlled by [each of the Defendants]; and/or (ii) computer equipment, . . . that stores, serves, and/or runs any of the foregoing." (Complaint, ¶¶ 27, 33, and 35). The allegedly infringing web applications and software identified in the Complaint include www.nordstrom.com, www.target.com, and www.williams-sonoma.com (collectively, "Accused Websites").

Defendants Williams Sonoma, Inc. ("WSI" or "Williams Sonoma"), Nordstrom, Inc. ("Nordstrom"), Target Corporation ("Target Corp."), and Target Brands, Inc. ("Target Brands") (collectively "Moving Defendants") bring this motion to sever the claims against those entities and transfer them to the Northern District of California pursuant to 28 U.S.C. §1404(a).

## II. SEVERANCE

On May 8, 2012, Moving Defendants filed a Notice of Supplemental Authority to their pending motion to sever and transfer, attaching a copy of the opinion from the United States Court of Appeals for the Federal Circuit in *In re EMC Corp.*, Misc. Docket No. 100 (Fed. Cir. May 4, 2012). According to Moving Defendants, the *EMC* case is new, relevant authority on the issues set forth in Defendants' motion, including joinder and severance under Rules 20 and 21 of the Federal Rules of Civil Procedure.

In its response, Plaintiff conceded that in light of *EMC*, Moving Defendants should each be severed into separate actions. According to Plaintiff, severance of each of the Moving Defendants creates the following four groups: (1) Williams Sonoma; (2) Nordstrom; (3) Target; and (4) the Non-

Moving Defendants.  Based on Plaintiff's response, the Court agrees that the Moving Defendants should be severed into three separate causes of action.  Williams Sonoma, Nordstrom, and the two Target defendants are each severed into three separate causes of action, with the non-moving Defendants remaining in C.A. No. 2:11cv401.  The Court now considers whether Plaintiff's separate causes of action against WSI, Nordstrom, and Target should be transferred to the Northern District of California.

### III.  28 U.S.C. §1404(a)

Title 28, Section 1404(a) of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  A district court has broad discretion in deciding whether to order a transfer.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").  The Supreme Court of the United States has noted that Section 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The Court of Appeals for the Fifth Circuit has set forth that the first "threshold" determination a district court must make under Section 1404(a) is whether the claims could have been brought in the proposed transferee district.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  After such a determination, the district court must then consider the convenience of the parties and witnesses in both forums.  *Id.*; *see also Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009); *Bolt v. Toyota Indus. Corp.*, 351 F. Supp. 2d 597, 599 (E.D. Tex. 2004).

A convenience determination consists of balancing the conveniences and inconveniences resulting from the plaintiff's choice of venue, in comparison with those of the proposed venue. This balancing includes examining several private and public interest factors, none of which has dispositive weight. *Volkswagen I*, 371 F.3d at 203. The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n.6 (1981)); *see also In re TS Tech*, 551 F.3d at 1319. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws o[r] the application of foreign law." *Volkswagen I*, 371 F.3d at 203 (citing *Piper*, 454 U.S. at 241 n.6); *see also In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a separate factor. *Volkswagen II*, 545 F.3d at 314-15. Instead, the plaintiff's choice of venue contributes to the defendant's burden to prove that the transferee venue is "clearly more convenient" than the plaintiff's chosen venue. *Id.* at 315; *In re TS Tech*, 551 F.3d at 1319. Also, although the private and public interest factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

## IV.  TRANSFER ANALYSIS

### A.    Parties' arguments

Defendants move to transfer Plaintiff's cases against them to the Northern District of

California, asserting it is significantly more convenient for the parties and potential non-party witnesses.  Defendants submit the witnesses primarily responsible for managing and maintaining WSI, Nordstrom, and Target's Accused Websites are located in California, Washington, and Minnesota, making it more convenient for these witnesses to attend trial in California. In contrast, Defendants assert Plaintiff has only one employee working in the Eastern District of Texas.

Plaintiff asserts transfer of any of the Moving Defendants is not clearly more convenient. According to Plaintiff, this case is already on track for swift resolution in this district,  and transfer at this point would be wasteful of both the judiciary's and the parties' resources. Plaintiff emphasizes that Droplets is a real, practicing EDTX company entitled to file suit in its home forum.

**B.     Whether Plaintiff's claims could have been brought in the proposed transferee district**

Before reaching the factors, the Court notes Moving Defendants assert Plaintiff could have filed these lawsuits in the Northern District of California. Plaintiff does not dispute this.

**C.     Consideration of the factors for each group of Moving Defendants**

**1.     Private Interest Factors**

(a)  Sources of Proof

Despite technological advances that undoubtedly reduce the relative inconvenience of transporting documents across the country, this factor must still be considered.  *Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.").

Defendants submit that the location of Defendants' sources of proof is more important than the location of Plaintiff's sources of proof because "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the

defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).  Presumably, the bulk of discovery material relating to a corporate party is located at the corporate headquarters.  *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

Plaintiff resides in the Eastern District of Texas.  According to Plaintiff, the vast majority of its relevant documents reside with this district.  Plaintiff further asserts Defendants "have diverse geographic ties" across the United States, neutralizing this factor.  (Docket Entry # 89 at pg. 15).

**(i)     Williams Sonoma**

WSI is a Delaware corporation with its principal place of business in San Francisco, California. (Docket Entry #52, ¶ 10) (Madrigal Decl., ¶ 2). WSI operates a website, www.williams-sonoma.com, which is accessible from anywhere in the United States. *Id.*, ¶ 3. The engineers involved with the development of the relevant portions of the website work in San Francisco, California, and the documents relating to the development of the relevant portions of the website are located in San Francisco, California. *Id.*, ¶ 4-5. No such documents are located in Texas. *Id.*, ¶ 5. WSI employees responsible for accounting, sales, and marketing for the website work in San Francisco, California, and documents relating to accounting, sales, and marketing of the website are located in San Francisco, California. *Id.*, ¶ 6. No such documents are located in Texas. *Id.* WSI operates 245 retail stores in the United States. *Id.*, ¶ 7. Sixteen are in Texas, including only one in the Eastern District of Texas. *Id.* WSI operates 39 stores in California. *Id.*

Plaintiff does not challenge the fact that Williams Sonoma's party witnesses and sources of proof are located within the Northern District of California. Given the bulk of the relevant evidence in patent infringement cases usually comes from the accused infringer, this factor weighs heavily in

favor of a transfer to the Northern District of California.

**(ii)   Nordstrom**

Nordstrom is a Washington corporation with its principal place of business in Seattle, Washington. (Docket Entry # 48, ¶ 3) (Mayfield Decl., ¶ 2). Nordstrom operates a website, www.nordstrom.com, which is accessible from anywhere in the United States. *Id.*, ¶ 3. The engineers involved with the development of the relevant portions of the website work in Seattle, Washington, and the documents relating to the development of the relevant portions of the website are located in Seattle, Washington. *Id.*, ¶ 4-5. No such documents are located in Texas. *Id.* Nordstrom employees responsible for accounting, sales, and marketing for the website work in Seattle, Washington, and documents relating to accounting, sales, and marketing of the website are located in Seattle, Washington. *Id.*, ¶ 6. No such documents are located in Texas. *Id.* Nordstrom operates 226 physical retail stores in the United States. *Id.*, ¶ 7. Sixteen are located in Texas, including only one in the Eastern District of Texas. *Id.* Nordstrom operates 62 stores in California. *Id.*

Nordstrom's sources of proof are located in Seattle, Washington, much closer to the Northern District of California than to this district.  On balance, this factor weighs in favor of a transfer to the Northern District of California.

**(iii)   Target**

Target Brands and Target Corp. (collectively, "Target") are Minnesota corporations with their principal places of business in Minneapolis, Minnesota. (Docket Entry # 50, ¶¶ 8, 9) (Christopherson Decl., ¶ 2).  Target operates a website, www.target.com, which is accessible from anywhere in the United States. *Id.*, ¶ 3. The engineers involved with the development of the relevant portions of the website work in Minneapolis, Minnesota, and the documents relating to the development of the

7

relevant portions of the website are located in Minneapolis, Minnesota. *Id.*, ¶ 4-5. No such documents are located in Texas. *Id.* The Target employees responsible for accounting, sales, and marketing for the website work in Minneapolis, Minnesota, and documents relating to accounting, sales, and marketing of the website are located in Minneapolis, Minnesota. *Id.*, ¶ 6. No such documents are located in Texas. *Id.* Target operates 1765 physical retail stores in the United States. *Id.*, ¶ 7. Approximately 149 retail stores are located in Texas. *Id.* Target operates 252 stores in California. *Id.*

Plaintiff submits that Target's sources of proof are located closer to the Eastern District of Texas than the Northern District of California. And, as further pointed out by Plaintiff, Target's declarant Mr. Christopherson did not state the Northern District of California is more convenient for Target. With regard to the Target defendants, Plaintiff's proof is located within the Eastern District of Texas, and Target's proof is closer to this district than to California.  The Court finds this factor is neutral.

### (b)  Availability of Compulsory Process

Plaintiff argues this factor is neutral in cases like this one where witnesses are dispersed throughout the nation.  Defendants submit that the Northern District of California has absolute subpoena power (for depositions as well as trial) over Adobe and its non-party employees and at least six prior art inventors.  *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Although third-party Adobe and several prior art inventors are located in the Northern District of California, Plaintiff asserts Defendants ignore the lack of availability of compulsory process in California over the inventors and the patent prosecutors.

8

### (i) Inventors and Prosecuting Attorneys

The Asserted Patents share the same seven inventors. On their face, the patents indicate that the inventors all resided in New York or New Jersey at the time of issuance. It appears that six of the seven inventors still live in New York or New Jersey, and the seventh, Louis M. Franco, lives in Massachusetts. (Hannah Decl., ¶ 4). None live in this district.

Plaintiff asserts "four inventors and one patent prosecutor have signed declarations or agreements submitting to EDTX jurisdiction" and another prosecutor is admitted to the Eastern District of Texas bar.  (Docket Entry # 89 at pg. 17).  However, as noted by the Court in its March 5, 2012 Order transferring the first of three cases filed by Plaintiff regarding the patents-in-suit, *Droplets v. E*Trade Financial Corporation, et al.* ("The E*Trade Case"), C.A. no. 2:11cv255, to the Southern District of New York, Plaintiff has not shown that the agreement of a patent prosecutor or inventor to appear in the Eastern District of Texas is equivalent to the Court actually having subpoena power over that witness.  E*Trade Transfer Order at pg. 6.

Further, even assuming that certain individuals are subject to this Court's subpoena powers, Plaintiff does not dispute that the Northern District of California has absolute subpoena power over numerous other potential witnesses, discussed below.

### (ii) Prior Art Witnesses

According to Defendants, six prior art inventors have knowledge about relevant prior art and are likely to provide "important testimony bearing on, at least, the issue of invalidity of the Asserted Patents."  (Docket Entry #76 at pg. 16). These six prior art witnesses are believed to reside and/or work within 100 miles of the Northern District of California's San Francisco's courthouse and are subject to compulsory process in that district. (Hannah Decl., ¶¶ 5-6).

The presence of potential prior art witnesses located in the destination venue weighs in favor of transfer. *See, e.g., U.S. Ethernet Innovations, LLC v. ACER, Inc.*, No. 6:09cv-448, slip op. at 18 (E.D. Tex. July 13, 2010) ("there are no nonparty witnesses that reside in the Eastern District of Texas, yet there are potentially important non-party witnesses such as . . . prior art witnesses . . . that would presumably experience more convenience and less expense if this case were tried in the Northern District of California").

**(iii) *Adobe* Case**

Defendants further assert witnesses from Adobe Systems Incorporated ("Adobe"), located in the Northern District of California, will testify regarding Defendants' defenses. (Hannah Decl., ¶¶ 5-6). In 2006, Droplets filed a patent infringement case against Adobe and others ("Adobe Litigation"). *Droplets, Inc. v. Adobe Sys., Inc., et. al.*, C.A. No. 2:06cv307 (E.D. Tex.). Adobe and Droplets entered into a settlement agreement resolving Droplets' claims of patent infringement, trade secret misappropriation, and breach of contract, and Defendants assert this agreement could impact the claims and defenses in this litigation, issues such as patent exhaustion. *See* Nordstrom Answer (Docket Entry # 48); Target Answer. (Docket Entry #50); WSI Answer (Docket Entry # 53) (all asserting patent license/exhaustion affirmative defense). According to Defendants, Adobe has material knowledge regarding both the settlement/license agreement and Adobe's accused and prior art products, and may be required to testify at a trial. Adobe is headquartered in the Northern District of California. (Hannah Decl., ¶¶ 8-9).

On balance, this factor weighs slightly in favor of transfer.

10

(c)  Cost of Attendance for the Parties and Witnesses

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *Volkswagen I*, 371 F.3d at 204.  Further, courts are not to consider the "significance of the identified witnesses' testimony," at least not beyond "assess[ing] the relevance and materiality of the information the witness may provide."  *In re Genentech*, 566 F.3d at 1343.  The relative materiality of witnesses' testimony is irrelevant to this inquiry.  *See id.* ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").  Thus, for the transfer analysis, all potential material and relevant witnesses must be considered as offering testimony of equal importance.

The Fifth Circuit has adopted a "100-mile rule" to assist in analyzing this factor, which is clearly applicable here.  *See Volkswagen I*, 371 F.3d at 204-205.  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 205.  When applying the 100-mile rule, the threshold question is whether the plaintiff's chosen venue and the proposed venue are more than 100 miles apart.  *See Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.  If so, then a court determines the respective distances between the residences (or workplaces) of all the identified relevant witnesses and the two venues under consideration.  *See Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.

The 100-mile rule generally favors transfer (with differing degrees) if the proposed venue is a shorter average distance away from witnesses than the plaintiff's chosen venue.  *See Volkswagen*

*II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320.  Finally, for this factor to favor transfer, the proposed venue need not be more convenient for *all* of the witnesses.  *In re Genentech*, 566 F.3d at 1345.  Instead, this factor can favor transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in plaintiff's chosen venue.  *Id.*

Plaintiff is headquartered in Plano, Texas, which is within the Eastern District of Texas. Plaintiff's Chief Executive Officer works at that headquarters.  Although Defendants assert substantial numbers of material witnesses reside in the transferee venue, Plaintiff asserts Defendants fail to identify specific witnesses who will be inconvenienced, and Defendants fail to account for the named inventors of the patents-in-suit and five patent prosecutors located in the Southern District of New York, closer to the Eastern District of Texas than to the Northern District of California.

### (i)     Williams Sonoma/Nordstrom

WSI's and Nordstrom's headquarters are located on the West Coast.  WSI's engineers and employees knowledgeable about its accused website reside in the Northern District of California. (Madrigal Decl., ¶ 4). Nordstrom's engineers and employees knowledgeable about its accused website reside in Seattle, Washington, approximately 1500 miles closer to the Northern District of California than this district. (Hannah Decl., ¶ 10). *Id.* Moreover, Adobe and at least six prior art witnesses reside in the Northern District of California, and travel to Marshall would be inconvenient for these third-party witnesses.

Considering all of the evidence, the Court finds this factor weighs in favor of transfer.

### (ii)    Target

Defendants asserts it will be significantly easier for Target's engineers and employees knowledgeable about its accused website to travel to the Northern District of California than this

district for trial. Target's engineers and employees will be forced to travel a minimum of approximately1000 miles to trial, regardless of whether it is held in this district or in California. Taking into account travel time, Defendants assert they will save almost an hour and a half each way if this case is transferred.

Plaintiff asserts any difference in transportation costs to and from the Eastern District of Texas or the Northern District of California would likely be mitigated by the increased food and lodging costs and the longer expected trial length in California. According to Plaintiff, the per diem rates for fiscal year 2012 published by the General Services Administration show that the San Francisco per diem rate for lodging averages about two times as much as in Marshall. Plaintiff further asserts meals and incidentals are roughly 50% more expensive in San Francisco.

On balance, given Target's headquarters are located in Minnesota, the Court finds this factor neutral.

### (d)  Practical Problems

Even though this case is still in the early stages of litigation, practical problems include those that are "rationally based on judicial economy." *Digital Reg of Texas, LLC v. Adobe Systems, Inc., et al.*, C.A. No. 6:11cv305-LED (E.D. Tex. March 28, 2012).  The "existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice."  *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*").

The Court has already transferred the other two original *Droplets* cases, *Droplets v. E*Trade Financial Corporation, et al.*, C.A. 2:11cv255 and *Droplets v. Amazon.com, et al.*, C.A. No. 2:11cv392. Plaintiff asserts each of the *Droplets* cases involves the same patents and substantially

13

overlapping infringement allegations.  Plaintiff further points out the Court has consolidated parts of the *Droplets* cases for pretrial purposes, including claim construction.  Plaintiff also submits the Northern District of California conducts longer trials than this district, and the food and lodging costs are higher in California.

The Court understands Plaintiff's concerns regarding judicial economy.  However, the defendants in the other two originally-filed *Droplets* cases demonstrated other forums were more convenient.  The E*Trade Case was transferred to the Southern District of New York whereas the Amazon.com Case was recently transferred to the Northern District of California.  Because half of the defendants in this case have not requested transfer out of the Eastern District of Texas, the reality is three different courts will adjudicate issues common to the *Droplets* cases even if the Court denies Moving Defendants' requests for a transfer.

On balance, judicial economy concerns do weigh against transfer.   The relative weight of this factor is discussed further in Section IV.E., below.

**D.**     **Public Interest Factors**

(a)  Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis.  A proposed transferee court's "less congested docket" and "ab[ility] to resolve this dispute more quickly" is a factor to be considered.  *In re Hoffmann-La Roche*, 587 F.3d at 1336.  This factor is the "most speculative," and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors."  *In re Genentech*, 566 F.3d at 1347.

Defendants assert the median time to disposition in this district is similar to that in the

14

Northern District of California.  Plaintiff submits the expected time to trial is longer in California.

The Court finds this factor neutral.

(b)  Local Interest

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206.  Thus, this factor analyzes the "factual connection" that a case has with both the transferee and transferor venues. *See Volkswagen I*, 371 F.3d at 206.  Generally, local interests that "could apply virtually to any judicial district or division in the United States" are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of citizens who used the widely-sold product within the plaintiff's chosen venue); *In re TS Tech*, 551 F.3d at 1321 (in a patent suit, disregarding local interest of citizens in the plaintiff's chosen venue who used the allegedly infringing products because the products were "sold throughout the United States").

Plaintiff moved its headquarters to Dallas, Texas in 2005 and to Plano, Texas, which is within the Eastern District of Texas, in 2009.  Plaintiff's Chief Executive Officer, David Berberian, works from Plaintiff's Plano, Texas headquarters and has lived in Texas for over 30 years.

WSI has a customer care center in Dallas, Texas; 17 stores in Texas; and at least two stores in the Eastern District of Texas. (Madrigal Decl. ¶7).  Nordstrom has 16 stores in Texas and at least one store in the Eastern District of Texas. (Mayfield Decl ¶7).  Target has distribution centers in Tyler, Fort Worth, and Midlothian, Texas; 149 stores in Texas; and at least 20 in the Eastern District of Texas. (Christopherson Decl. ¶ 7).

Moving Defendants' products may be accessed by Eastern District of Texas citizens. Also,

15

users of Moving Defendants' products can go to their Eastern District of Texas stores.  Thus, there is a local interest in having the case resolved in the Eastern District of Texas.  However, given WSI is located in the Northern District of California, and Nordstrom is located much closer to California than to the Eastern District of Texas, the Northern District of California has a strong local interest in the underlying suit.  Therefore, the Court finds this factor favors transfer of Plaintiff's cases against these two west coast companies.

With regard to Target, the Court finds this factor is neutral. *See Invitrogen Corp. v. GE*, C.A. No. 6:08cv112 (E.D. Tex. Feb. 9, 2009)(stating  the local interest factor will be neutral" "when a defendant sells products all over the country [and] no specific venue has a dominant interest in resolving the issue of patent infringement.")

(c)  Familiarity With the Governing Law

No party has shown that this factor is applicable.  The Court accordingly finds this factor neutral.

(d)  Avoidance of Unnecessary Conflict of Laws Problems

No party has shown that this factor is applicable.  The Court accordingly finds this factor neutral.

**E.     Balancing the Factors**

For WSI and Nordstom, the Court has found the location of sources of proof; the convenience of witnesses; and local interest factors weigh in favor or transfer, strongly so for WSI; these same factors are neutral with regard to Target.  The availability of compulsory process weighs slightly in favor of transfer whereas judicial economy weighs against transfer.  The remaining factors are neutral. Considering all of the factors, Target has not shown that transfer to the Northern District

of California is clearly more convenient.  Target's motion to transfer is denied.

The issue then is whether the creation of four newly-severed causes of action warrants denial of WSI's and Nordstrom's motions to transfer in the interest of judicial economy. The Federal Circuit has "considered and rejected arguments that the preservation of judicial economy should preclude transfer to a far more convenient venue." *In re Morgan Stanley*, Misc. Nos. 962, 964, 967, 417 Fed. App'x 947, 949 (Fed. Cir. Apr. 6, 2011). The Court has already transferred the E*Trade Case to the Southern District of New York and the Amazon.com Case to the Northern District of California, the transferee district here.  Thus, three courts will be adjudicating issues involving the same two patents-in-suit.  Considering all of the factors, the Court concludes that considerations of judicial economy are outweighed by WSI and Nordstrom's sources of proof; the availability of compulsory process; the convenience of witnesses, and the strong local interest of the Northern District of California with regard to those defendants. WSI and Nordstrom have shown it is clearly more convenient for the parties and witnesses to transfer the instant case to the Northern District of California.

## V.  CONCLUSION

Based on the foregoing, it is

**ORDERED** that Defendants' Motion to Sever(Docket Entry # 76-1) is hereby **GRANTED**. It is further

**ORDERED** the above-captioned case is hereby severed into four separate causes of action: (1) *Droplets, Inc. v. ebay, Inc., et al.* (the Non-Moving Defendants)(C.A. No. 2:11cv401)*; (2) Droplets, Inc. v. Williams Sonoma, Inc.* (C.A. No. 2:12cv389); (3) *Droplets, Inc. v. Nordstrom, Inc.* (C.A. No. 2:12cv390); and (4) *Droplets, Inc. v. Target Corporation and Target Brands, Inc.* (C.A.

No. 2:12cv391).   It is further

ORDERED that the filing fee is waived for the severed cases.  In each of the severed cases, the Clerk of the Court shall docket the most recent complaint, the defendant's answer, and the most recent scheduling order.  In C.A. No. 2:12cv391, the Clerk of the Court shall also docket Droplets, Inc.'s Motion to Supplement the ESI Order with an Additional Paragraph as Discussed at the March 29, 2012 Scheduling Hearing (Docket Entry # 102 in C.A. No. 2:11cv401); the response (Docket Entry #106); the reply (Docket Entry # 110) and the surreply (Docket Entry # 117).  It is further

ORDERED that WSI and Nordstrom's motions to transfer are GRANTED.  Plaintiff's newly-created causes of action against Defendants Williams Sonoma, Inc. and Nordstrom, Inc. (C.A. Nos. 2:12cv389 and 2:12cv390) are transferred to the Northern District of California.  It is further

ORDERED that Target Corporation and Target Brands, Inc.'s motion to transfer is DENIED.

SIGNED this 2nd day of July, 2012.


CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE